## NO. PD-1389-15

| | | |
|---|---|---|
| TIMOTHY JAMES LINDBERG | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| STATE OF TEXAS | § | OF TEXAS |

## PETITION FOR DISCRETIONARY REVIEW

On Discretionary Review from Cause Number 02-14-00071-CR
Second Court of Appeals, Fort Worth

Trial Court Cause Number 1255906D
432nd Judicial District
Tarrant County, Texas

Submitted by:

The Salvant Law Firm, PC
610 E. Weatherford
Fort Worth, Texas 76102
Phone: (817) 334–7997
Fax:   (817) 334–7998
Brian Salvant
Texas Bar No. 24008387
E-mail: brian@salvantlawfirm.com
Adam L. Arrington
State Bar of Texas No. 24085685
E-mail: adam@salvantlawfirm.com

Attorneys for Appellant

RECEIVED IN
COURT OF CRIMINAL APPEALS

November 23, 2015

ABEL ACOSTA, CLERK

*ORAL ARGUMENT NOT REQUESTED*

# I. Identity of Parties and Counsel

**Timothy James Lindberg, Appellant**

**Brian W. Salvant, Attorney for Appellant on Appeal**, 610 E. Weatherford St., Fort Worth, Texas 76102, phone (817) 334-7997, fax (817) 334–7998, email brian@salvantlawfirm.com.

**Adam L. Arrington, Attorney for Appellant on Appeal (Petition for Discretionary Review)**, 610 E. Weatherford St., Fort Worth, Texas 76102, phone (817) 334-7997, fax (817) 334–7998, email adam@salvantlawfirm.com.

**Danny Burns, Attorney for Appellant at Trial**, 115 North Henderson St., Fort Worth, Texas 76102, phone (817) 870-1544, fax (817) 870–1589, email dburnslaw@sbcglobal.net.

**State of Texas, Appellee**.

**Sharen Wilson, Tarrant County District Attorney, Attorney for Appellee**, 401 W. Belknap Street, Fort Worth, Texas 76196, phone (817) 884-1400, fax (817) 884-3333.

**Dale Smith, Assistant District Attorney, Attorney for Appellee at Trial**, 401 W. Belknap Street, Fort Worth, Texas 76196, phone 817-884-1400, fax (817) 212-6973.

**Kelly Meador, Assistant District Attorney, Attorney for Appellee at Trial**, 401 W. Belknap Street, Fort Worth, Texas 76196, phone 817-884-1400, fax (817) 212-6973.

**Hon. Ruben Gonzalez, Jr., Judge presiding over trial (voir dire only)**, 432nd Judicial District Court, Tarrant County, 401 West Belknap Street, Fort Worth, Texas 76196, phone (817) 884-2935.

**Hon. Elizabeth Berry, Judge presiding over trial**, sitting by assignment, 432nd Judicial District Court, Tarrant County, 401 West Belknap Street, Fort Worth, Texas 76196, phone (817) 884-2935.

# II. Table of Contents

**I. Identity of Parties and Counsel**................................................................ ii

**II. Table of Contents**............................................................................iii

**III. Table of Authorities** ........................................................................ v

**IV. Statement Regarding Oral Argument** ........................................................ viii

**V. Statement of the Case** ........................................................................ ix

**VI. Procedural History**........................................................................ xi

**VII. Questions or Grounds for Review**................................................................ 1

**VIII. Argument** ................................................................................ 3

> **Question or Ground for Review <u>One</u>: Does a trial court abuse its discretion by admitting, over a defendant's hearsay, due process and confrontation clause objections, a video of the complainant's entire forensic interview in evidence under the Rule of Optional Completeness, when no part of the video had been given in evidence by the defense, and there was no risk that the jury would receive a false impression without watching the entire video?**

> **Question or Ground for Review <u>Two</u>: Does an appellate court err when it reviews a trial court's denial of a timely and properly requested limiting instruction for an abuse of discretion?**

> **Question or Ground for Review <u>Three</u>: Does a trial court err when it admits evidence under the Rule of Optional Completeness without a limiting instruction, if such an instruction is timely and properly requested?**

Question or Ground for Review <u>Four</u>: Does a trial court abuse its discretion when it allows an expert witness to testify generally, over objection, about "rolling" disclosures and what happens in other cases without a showing that her testimony is sufficiently tied to the facts of the case to aid the jury in resolving a factual dispute, when the expert witness makes no effort to tie her testimony to pertinent facts of the case?

Question or Ground for Review <u>Five</u>: Are any and all statements made by a patient to a sexual assault nurse examiner (SANE) during the SANE's examination of the patient admissible to prove the truth of the matter(s) asserted under Texas Rule of Evidence 803(4)?

Question or Ground for Review <u>Six</u>: Under the *Jackson v. Virginia* standard, are a complainant's uncorroborated, unsworn out-of-court statements legally sufficient evidence of guilt when those statements are contradicted by the complainant's sworn testimony at trial and the State and defense stipulate that the complainant admitted the *actus reus* of the charged offense never happened?

IX. Conclusion and Prayer ........................................................................ 41

X. Certificate of Service ........................................................................... 42

XI. Certificate of Compliance with Rule 9.4 ............................................ 42

Appendix: Judgment and Opinion of the Court of Appeals in *Lindberg v. State*, No. 02-14-00071-CR (Tex. App.—Fort Worth, September 24, 2015)

# III. Table of Authorities

*Beheler v. State*, 3 S.W.3d 182 (Tex. App.—Fort Worth 1999, pet. ref'd) ........... 31

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) ...................................... 38

*Casey v. State,* 215 S.W.3d 870 (Tex. Crim. App. 2007) ...................................... 24

*Credille v. State*, 925 S.W.2d 112 (Tex. App.—Houston [14th Dist.] 1996, writ ref'd) ................................................................................................................ 4, 9, 11

*Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623 (Tex. 2002) .................................... 21

*Fernandez v. State*, 755 S.W.2d 220 (Tex. App.—Houston [1 Dist.] 1988), *rev'd,* *Fernandez v. State*, 805 S.W.2d 451 (Tex. Crim. App. 1991) (en banc) .............. 37

*Fernandez v. State*, 805 S.W.2d 451 (Tex. Crim. App. 1991) (en banc) .............. 38

*Gigliobianco v. State*, 210 S.W.3d 637 (Tex. Crim. App. 2006) .......................... 24

*Hammock v. State*, 46 S.W.3d 889 (Tex. Crim. App. 2001) .................................. 14

*Hoover v. State*, No. 03-05-00641-CR, 2007 WL 619500 (Tex. App.–Austin Feb. 27, 2007, no pet.) ................................................................................................ 16, 17

*Jackson v. Virginia*, 443 U.S. 307 (1979) .................................................. 33, 34, 35

*Johnson v. State*, 23 S.W.3d 1 (Tex. Crim. App. 2000) (McCormick, P.J., dissenting), *overruled by Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) ...................................................................................................................... 38-39

*Jordan v. State*, 928 S.W.2d 550 (Tex. Crim. App. 1996) .................................... 21

*Kimberlin v. State*, 877 S.W.2d 828 (Tex. App.—Fort Worth 1994, writ ref'd) ................................................................................................................ 35, 36, 37

*Lindberg v. State*, No. 02-14-00071-CR, 2015 Tex. App. LEXIS 10042 (Tex. App.—Fort Worth Sept. 24, 2015) (mem. op., not designated for publication) ................ passim

*Mick v. State*, 256 S.W.3d 828 (Tex. App.—Texarkana 2008, no pet.) .............. 5, 6

*Montgomery v. State*, 810 S.W.2d 387 (Tex. Crim. App. 1991) (Op. on Reh'g) ............................................................................................ 23, 24, 25

*Salazar v. State*, 127 S.W.3d 355 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) ............................................................................................ 22, 24

*Sauceda v. State*, 129 S.W.3d 116 (Tex. Crim. App. 2004) (en banc) ........ 9, 10, 11

*Taylor v. State*, 268 S.W.3d 571 (Tex. Crim. App. 2008) .................... 28, 29, 30, 31

*Tear v. State*, 74 S.W.3d 555 (Tex. App.—Dallas 2002, pet. ref'd) ................ 35, 36

*Tibbs v. Florida*, 457 U.S. 31 (1982) ................................................................ 40

*Washington v. State*, 856 S.W.2d 184 (Tex. Crim. App. 1993) (per curiam) ..... 6, 7

*Williams v. State*, 895 S.W.2d 363 (Tex. Crim. App. 1994) .......................... 21-22

## Statutes and Rules

Tex. Penal Code Ann. § 22.021(a)(1)(B) (West Supp. 2015) ............................ 33

Tex. R. App. Proc. 9.4 ................................................................................ 42

Tex. R. App. Proc. 9.5 ................................................................................ 42

Tex. R. App. Proc. 9.10 ................................................................................ 4

Tex. R. App. Proc. 44.2 .................................................................... 12, 25, 31

Tex. R. App. Proc. 47.7 ............................................................................ 17

Tex. R. App. Proc. 66.3 ..................................................................... passim

Tex. R. App. Proc. 68.4 ...................................................................... viii, 2

Tex. R. App. Proc. 68.11 ........................................................................... 42

Tex. R. Evid. 105 ............................................................................. 14, 17

Tex. R. Evid. 107 ............................................................................... passim

Tex. R. Evid. 401 .............................................................................. 21, 23

Tex. R. Evid. 403 ......................................................................... 22, 23, 26

Tex. R. Evid. 803 ............................................................................... passim

## IV. Statement Regarding Oral Argument

Pursuant to Texas Rule of Appellate Procedure 68.4(c), Appellant does not request oral argument. Although this is a meritorious petition for discretionary review, Appellant believes that the facts and legal arguments are adequately presented in this Petition and in the record. Appellant also believes that the decisional process of the Court will not be significantly aided by oral argument. The arguments are clear and concise and do not require oral argument to be resolved. Further, the arguments were also clear and concise in the Appellant's Brief to the Court of Appeals. As a result, Appellant does not request oral argument and asks that the questions presented in this Petition be considered by this Court by submission only.

**To The Honorable Judges of the Court of Criminal Appeals:**

Timothy James Lindberg, Appellant, respectfully submits this petition for discretionary review:

## V. Statement of the Case

Appellant was tried and convicted of two counts of aggravated sexual assault of a child under 14 years of age. Count One alleged that Appellant intentionally or knowingly caused the mouth of the complainant to contact Appellant's penis. (CR, 5)[1]. Count Two charged that he intentionally or knowingly caused the anus of the complainant to contact his penis. Id. On appeal to the Second Court of Appeals, Appellant raised nine points of error: two concerned the sufficiency of the evidence; one complained of error during voir dire; four complained of evidentiary errors; one concerned the trial court's failure to give a limiting instruction; and one complained of improper jury argument. (*See* Appellant's Brief). The Court of Appeals overruled all of Appellant's issues on appeal and affirmed the judgment of the trial court. *Lindberg v. State*, No. 02-14-00071-CR (Tex. App.—Fort Worth, September 24, 2015). This petition for discretionary review requests that this Court review the judgment and opinion of the Second Court of Appeals. (*See* Appendix).

---

[1] The Clerk's Record is referenced throughout this Brief as "CR," followed by the page number of the Clerk's Record. The Reporter's Record, which is comprised of six volumes, is referenced with an "RR" followed by the volume number (i.e., Volume 4 is referenced as "RR4") and by the page number or Exhibit number within the Volume referenced.

In this petition, Appellant presents six questions or grounds for review.

## VI. Procedural History

Appellant was charged by indictment with two counts of aggravated sexual assault of a child under Cause Number 1255906D. (CR, 5). In a special issue, the State alleged that, at the time the charged offense was committed, the complainant was a child younger than six years of age. Id. Appellant pleaded "not guilty" to the indictment and not true to the Special Issue. (RR002, 11, 210).

On February 6, 2014, a jury found Appellant guilty of both counts of aggravated sexual assault of a child under 14 years of age and also made an affirmative finding on the special issue. (RR005, 83-85; CR22, 151-3; CR30, 95-97). The court sentenced Appellant to 38 years in the Texas Department of Criminal Justice on each count, to run concurrently. (CR, 67-71; RR005, 17).

Appellant appealed his conviction and sentence to the 2nd Court of Appeals, Fort Worth. On September 24, 2015, the Court of Appeals affirmed Appellant's conviction and sentence. *Lindberg v. State*, No. 02-14-00071-CR (Tex. App.—Fort Worth, September 24, 2015) (See Appendix).

# VII. Questions or Grounds for Review

Appellant presents six questions or grounds for discretionary review. Appellant asks this Court to determine the following: (1) Does a trial court abuse its discretion by admitting, over a defendant's hearsay, due process and confrontation clause objections, a video of the complainant's entire forensic interview in evidence under the Rule of Optional Completeness, when no part of the video had been given in evidence by the defense, and there was no risk that the jury would receive a false impression without watching the entire video? (2) Does an appellate court err when it reviews a trial court's denial of a timely and properly requested limiting instruction for an abuse of discretion? (3) Does a trial court err when it admits evidence under the Rule of Optional Completeness without a limiting instruction, if such an instruction is timely and properly requested? (4) Does a trial court abuse its discretion when it allows an expert witness to testify generally, over objection, about "rolling" disclosures and what happens in other cases without a showing that her testimony is sufficiently tied to the facts of the case to aid the jury in resolving a factual dispute, when the expert witness makes no effort to tie her testimony to pertinent facts of the case? (5) Are any and all statements made by a patient to a sexual assault nurse examiner (SANE) during the SANE's examination of the patient admissible to prove the truth of the matter(s) asserted under Texas Rule of Evidence 803(4)? (6) Under the *Jackson v. Virginia*

standard, are a complainant's uncorroborated, unsworn out-of-court statements legally sufficient evidence of guilt when those statements are contradicted by the complainant's sworn testimony at trial, and the State and defense stipulate that the complainant admitted the *actus reus* of the charged offense never happened?

Pursuant to Texas Rule of Appellate Procedure 68.4(f), the pages of the record in which the matter complained of are found throughout the reporter's record and clerk's record, but especially in the following pages: Reporter's Record Volume 3, pages 14-168; Reporter's Record Volume 6, pages 4-5; Clerk's Record pages 5, 43.

# VIII. Argument

**Question or Ground for Review: Does a trial court abuse its discretion by admitting, over a defendant's hearsay, due process and confrontation clause objections, a video of the complainant's entire forensic interview in evidence under the Rule of Optional Completeness, when no part of the video had been given in evidence by the defense and there was no risk that the jury would receive a false impression without watching the entire video?**

## 1. Law and Argument

## Introduction

This question pertains to the issue of the admissibility of State's Exhibit No. 2 (the video recording of the child complainant's forensic interview), which is the basis of the sixth issue of Appellant's Brief to the Court of Appeals, in which Appellant argued that the trial court committed reversible error when it admitted State's Exhibit No. 2 into evidence. (Appellant's Brief, pp. 79-91). Therefore, should this Court grant this petition for discretionary review on this Question or Ground for Review, Appellant asks that this Court also consider Appellant's arguments in Issue Six of his direct appeal regarding the admissibility of State's Exhibit No. 2.

## Opinion of the Court of Appeals

In its opinion, the Court of Appeals concluded that the trial court's decision to admit State's Exhibit 2 in evidence was within the bounds of its discretion. *Lindberg v. State*, No. 02-14-00071-CR, 2015 Tex. App. LEXIS 10042, at *14

(Tex. App.—Fort Worth September 24, 2015) (mem. op., not designated for publication). The Court relied on *Credille v. State*, 925 S.W.2d 112 (Tex. App.—Houston [14th Dist.] 1996, writ ref'd), for the propositions that "when a portion of a videotaped conversation is inquired into by the defense, the State is entitled to offer any other evidence that is necessary to make the conversation fully understood," and that, "under Rule 107, the State is entitled to admission of a complainant's videotaped statement when (1) the defense attorney asks questions concerning some of the complainant's statements on the videotape, (2) the defense attorney's questions leave the possibility of the jury's receiving a false impression from hearing only a part of the conversation, with statements taken out of context, and (3) the videotape is necessary for the conversation to be fully understood." *Lindberg* at *14. The Court of Appeals reasoned that Appellant's opening statements to the jury and repeated questions to the child complainant (who the court referred to in its opinion as "Girl"[2]) and her mother on cross-examination "left open the possibility that the jury would receive a false impression—that Girl had denied that Lindberg touched her 'butt' with his penis, that Girl had described a person other than Lindberg as the assailant, or that Girl appeared to have been coached to make the statements that she made during the interview. Therefore, for the jury to fully understand the context of the conversations and determine which

---

[2] For the sake of continuity and to protect her identity, Appellant will refer to the child complainant as "Girl" in this Petition. *See* Tex. R. App. Proc. 9.10(a)(3), (b).

interpretation was correct, the trial court determined it was necessary to review the videotape." *Id.* The Court also cited *Mick v. State*, a Sixth Court of Appeals opinion that used similar analysis to uphold the admission of a videotaped forensic interview with the child complainant in an aggravated sexual assault of a child case. 256 S.W.3d 828, 831–32 (Tex. App.—Texarkana 2008, no pet.). *Id.* at *14. As a result, the Court of Appeals overruled Appellant's sixth issue on appeal. *Id.*

### Admissibility of State's Exhibit No. 2

After Appellant's counsel finished his cross-examination of Carrie Paschall and passed the witness, the State took the witness on voir dire outside the presence of the jury, laid the predicate for admission of the video recording of her forensic interview and offered State's Exhibit 2 "for all purposes." (RR003, 100-01; RR006, Ex. 2). The State argued that the forensic interview should be admissible under "the theory of optional completeness." (RR003, 102). Defense counsel expressed his belief that the State could "introduce the part about her saying that T.J. did put his penis in her mouth and touched it with her bottom and it hurt because I did ask about that" and could also "ask about [Girl] describing T.J. as having no hair" and being "tall and midsize" and that the State "could probably get the next sentence in too being related to that."[3] (RR003, 104-06). However, he maintained that the State

---

[3] It is not clear from the record, but counsel was probably referred to Girl's statements that T.J. has "a wife" and "kids." (RR006, Ex. 2). She identified his children as "Kristen and Kaitlin and Kevin" and their mother as "Nicole." Id.

"cannot introduce the entire interview and report; they can only introduce those portions which I questioned about." (RR003, 105). He then specified his objections and reiterated, "They can ask about what [Girl] said about what T.J. did, but . . . they certainly can't introduce the interview and they certainly can't put in the entire . . . statement." (RR003, 106). The State cited three appellate court opinions in support of its argument that State's Exhibit 2 was admissible. (RR003, 107). The trial court ruled that State's Exhibit No. 2 be admitted before the jury, based "upon the case law provided by the State and under Rule 107 of the Texas Rules of Evidence." (RR003, 108).

### State's Exhibit No. 2 was not admissible in its entirety under the Rule of Optional Completeness because Appellant had not yet given any part of the forensic interview in evidence.

The Court of Appeals' reliance on *Credille* and *Mick* is misplaced. *Mick* is distinguishable because in that case the defense specifically (and repeatedly) referenced the forensic interview during its cross-examination of another witness and elicited testimony from the witness about what the child told the forensic interviewer and the forensic interview itself. 256 S.W.3d 830-31. This case is more like *Washington v. State*, 856 S.W.2d 184 (Tex. Crim. App. 1993) (per curiam). In *Washington*, an investigator working for the defense had taped a pre-trial interview with one of the State's witnesses. *Id.* at 186. During his cross-examination of the witness at trial, the defendant asked the witness about various statements made

during the interview with the investigator. *Id.* The witness denied telling the investigator that he had seen someone named "Don" on the night of the murder but admitted making the other statements that the defendant wished to show were contradictory to his trial testimony. *Id.* Later, during its re-direct examination of the witness, the State asked the trial court to require the investigator to produce the tape recording of the interview. *Id.* Over appellant's objections, the tape was admitted into evidence and played for the jury. *Id.* The Tenth Court of Appeals held that the tape was properly admitted into evidence under the Rule of Optional Completeness. *Id.* (footnote and citations omitted). This Court reversed the decision of the Tenth Court of Appeals, explaining:

> Although the contents of a tape are subject to the Rule of Optional Completeness, the rule is not implicated until such time as a party attempts to have a portion of it "given in evidence." TEX.R.CRIM. EVID. 107. Then, the adverse party is entitled to introduce into evidence the remaining parts of the "act, declaration, conversation, writing or recorded statement," or any related "act, declaration, conversation, writing or recorded statement" necessary to a full understanding of the evidence. Id. Clearly, the first requirement of Rule 107 is that matter "be given" in evidence. Failing that, there is no justification under the rule for allowing introduction of the entire matter.

856 S.W.2d at 186. This Court held that the Court of Appeals erred in holding that the tape-recording was properly admitted into evidence under Rule 107 because "no mention was made of the taped conversation," "the witness (Wilkerson) was not aware of the tape's existence during his cross-examination," the defendant

"made no attempt to introduce the tape's contents into evidence," and the witness "was available to fully answer all questions surrounding his interview by appellant's investigator." *Id.* at 186-87. Similarly, in the present case, Girl was available to fully answer all questions surrounding her forensic interview, and at the point when the State offered State's Exhibit 2 in evidence, Appellant had yet to begin his case in chief; he had not called any witnesses and had offered only one exhibit, a picture of Girl and "Shamus," in evidence, which was admitted. (RR003, 34; RR006, Defendant's Ex. 1). In upholding the trial court's decision to admit the entire video, the Court of Appeals referenced some things Appellant's counsel said in his opening statement, *Lindberg* at \*14, but what the lawyers say is not evidence. Appellant made no mention of the video recording of the forensic interview and no attempt to introduce it into evidence. Because no part of State's Exhibit 2 had been "given in evidence" by Appellant, the entire exhibit was not admissible under the Rule of Optional Completeness.

**State's Exhibit 2 was not admissible in its entirety under Rule 107.**

Even if Appellant had "given" part of the forensic interview "in evidence" at this point, the Rule of Optional Completeness would only operate to allow the State to: (1) inquire into the whole on the same subject, and (2) give any other act, declaration, writing or recorded statement that is necessary to make it fully understood or to explain the same in evidence. Tex. R. Evid. 107. For this reason,

*Credille* is also distinguishable from the instant case. In *Credille*, the Fourteenth Court of Appeals ruled that, because the defendant inquired into a videotaped interview of the complainant, "the State was entitled to offer any other evidence that was necessary to make the conversation fully understood." 925 S.W.2d at 117. However, in that case, the defendant challenged the complainant's credibility during her interview and attacked the interviewer's failure to follow through on her investigation. *Id.* at 117. "For those reasons," the Court of Appeals said, "the trial court did not err in admitting the entire videotape under Rule 107." *Id.* By contrast, here, Appellant did not challenge the complainant's credibility during her forensic interview—on the contrary, his defense relied on the fact that Girl was truthful when she denied that he molested her and described someone else as her assailant—and he did not attack the failure of law enforcement to follow through on their investigation of Girl's allegations. The admission of the entire forensic interview was therefore not necessary to make whatever Appellant had "given in evidence" fully understood or to explain the same.

*Sauceda v. State*, 129 S.W.3d 116, 123 (Tex. Crim. App. 2004) (en banc), illustrates this point. In *Sauceda*, another aggravated sexual assault of a child case, the defense had attempted at trial to introduce the testimony of a CPS caseworker who interviewed the victim about the incident. 129 S.W.3d at 117. The trial court ruled that the State could introduce the entire videotape of the interview, which

contained numerous references to uncharged offenses, into evidence if the caseworker testified, under the Rule of Optional Completeness. *Id.* Just like in this case, the State relied on *Credille* to support its argument in *Sauceda*, while the appellant cited *Washington. Id.* at 119-20 (citations omitted). This Court distinguished *Credille* by pointing out that the defense in that case "pointed to specific statements made by the complainant during the interview which, taken out of context, could indeed have created the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing." *Id.* at 123 (citations and internal quotations omitted). Similarly, in the instant case, there was no possibility in this case that the jury would receive a false impression without seeing the entire video of Girl's forensic interview. Unlike in *Credille*, the complainant in this case was available to (and did) testify regarding the specific matters about which Appellant cross-examined other witnesses. After identifying Appellant as "T.J.," Girl testified that it was "T.J." who put his "tee-tee" in her mouth, no one else put their "tee-tee" in her mouth, and "T.J." did not touch her anywhere else on her body. (RR3, 53). After being questioned about Shamus and showing the jury that she knew who Shamus was, Girl explicitly testified that Shamus never touched her with his private part. (RR3, 59). Thus, it was not necessary to admit the entire video of her forensic interview in evidence.

Further, the "false impression" the Court of Appeals said the jury might have

received—"that Girl had denied that Lindberg touched her 'butt' with his penis, that Girl had described a person other than Lindberg as the assailant, or that Girl appeared to have been coached to make the statements that she made during the interview"—was not false at all. Girl had denied that Lindberg touched her "butt" with his penis, and she did describe a person other than Lindberg as the assailant. (RR006, Ex. 2). Whether she appeared to have been coached to make the statements that she made was a matter of interpretation, not an objective statement that could be proven true or false. Thus, unlike in *Credille*, the defense attorney's questions did not leave the possibility of the jury's receiving a false impression from hearing only a part of the conversation, and therefore Rule 107 does not allow for the admission of the entire forensic interview in evidence.

## In the alternative, *Credille* and *Mick* were wrongly decided and should be overruled.

Assuming arguendo that *Credille* and *Mick* are applicable to this case, the conclusions reached by the appellate courts on the Rule 107 issues in those cases are at odds with the plain language of the Rule of Optional Completeness and this Court's decisions in *Washington* and *Sauceda*. This Court even acknowledged in *Sauceda* that *Credille* "apparently contradict[s] the holding in *Washington*," though it stopped short of expressly disapproving *Credille*. 129 S.W.3d at 122. This case presents this Court with the opportunity to resolve this discord and clarify its holdings in *Washington* and *Sauceda*.

## The Court of Appeals did not analyze whether the trial court's error was harmful.

Because the Court of Appeals rejected Appellant's argument that the trial court erred in admitting State's Exhibit No. 2, it did not conduct a harm analysis. Under Texas Rule of Appellate Procedure 44.2(b), a non-constitutional error of the trial court must be disregarded unless it affected "substantial rights." Because the trial court erred in admitting the recording of Appellant's statements, the Court of Appeals should have determined whether this error affected a substantial right of Appellant.

## 2. Conclusion

The Court of Appeals' analysis of Appellant's sixth issue on appeal conflicts with prior precedent of this Court. Its decision was also premised on at least one inaccuracy and a misconstruction of the applicable rule.

Further, the Court of Appeals decided an important question of state law in a way that conflicts with applicable decisions of this Court and appears to have misconstrued a rule. Tex. Rule App. Proc. 66.3(c), (d).

Therefore, Appellant asks that this Court grant discretionary review, answer the question presented in the affirmative, reverse the opinion and judgment of the Court of Appeals, and remand this case back to the Court of Appeals to conduct an analysis of the harm caused by this error.

**Question or Ground for Review: Does an appellate court err when it reviews a trial court's denial of a timely and properly requested limiting instruction for an abuse of discretion?**

**1. Law and Argument**

## Introduction

This question pertains to the trial court's failure to restrict State's Exhibit No. 2 to its proper scope and instruct the jury accordingly, which is the basis of the seventh issue of Appellant's Brief to the Court of Appeals. (Appellant's Brief, pp. 92-96). Therefore, should this Court grant this petition for discretionary review on this Question or Ground for Review, Appellant asks that this Court also consider Appellant's arguments in Issue Seven of the direct appeal. Appellant will note at the outset that, if this Court answers the first Question presented in this Petition for Discretionary Review in the affirmative, then this Question will become moot.

## Opinion of the Court of Appeals

The Court of Appeals reviewed Appellant's seventh issue on appeal under an abuse-of-discretion standard. *Lindberg* at *14. The court did not discuss or analyze the arguments Appellant made in his brief in support of this issue but overruled it along with Appellant's sixth issue. *Id.*

## Standard of Review

The Court of Appeals erred in reviewing the trial court's ruling denying

Appellant a limiting instruction for an abuse of discretion. This Court has made clear that giving or refusing to give the jury a timely and properly requested limiting instruction is not a matter within the trial court's discretion. *Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001).

## 2. Conclusion

When evidence is admitted for a limited purpose, the trial court is required, upon request, to restrict the evidence to its proper scope and instruct the jury accordingly. Tex. R. Evid. 105(a). Whether to do so is not within the court's discretion. Thus, the Court of Appeals erred in this case by reviewing the trial court's ruling denying Appellant a limiting instruction for an abuse of discretion, and this Court should grant Appellant's Petition on this ground for review, reverse the opinion and judgment of the Court of Appeals, and remand this case back to the Court of Appeals to review Appellant's seventh point of error under the proper standard.

Further, the Court of Appeals decided an important question of state law in a way that conflicts with the applicable decisions of this Court. Tex. Rule App. Proc. 66.3(c).

Therefore, Appellant asks that this Court grant discretionary review, answer the question presented in the affirmative, reverse the opinion and judgment of the Court of Appeals, and remand this case back to the Court of Appeals to review

Appellant's seventh issue on appeal under the correct standard.

**Question or Ground for Review: Does a trial court err when it admits evidence under the Rule of Optional Completeness without a limiting instruction, if such an instruction is timely and properly requested?**

## 1. Law and Argument

### Introduction

This question also pertains to the trial court's failure to restrict State's Exhibit No. 2 to its proper scope and instruct the jury accordingly, which is the basis of the seventh issue of Appellant's Brief to the Court of Appeals. (Appellant's Brief, pp. 92-96). Therefore, should this Court grant this petition for discretionary review on this Question or Ground for Review, Appellant asks that this Court also consider Appellant's arguments in Issue Seven of the direct appeal. As is the case with the preceding Question/Ground for Review, if this Court answers the first Question presented in this Petition for Discretionary Review in the affirmative, then this Question will become moot.

### Opinion of the Court of Appeals

The Court of Appeals did not discuss or analyze the arguments Appellant made in his brief in support of this issue but overruled it along with Appellant's sixth issue. *Id.* The only law the court cited in support of its disposition of this point of error was *Hoover v. State*, an unpublished opinion in which the Third Court of Appeals ruled that, when "evidence was admissible under rule 107 for all purposes,

no limiting instruction was necessary at the time the evidence was introduced or in the charge." No. 03-05-00641-CR, 2007 WL 619500, at *5 (Tex. App.—Austin Feb. 27, 2007, no pet.) (not designated for publication).

## If State's Exhibit 2 was admissible in its entirety, then it should have been admitted with a limiting instruction because the evidence was not admissible for all purposes.

The plain language of Rule 107 indicates that evidence admitted under the rule is admissible for a limited purpose, that limited purpose being to make the part of an act, declaration, conversation, writing or recorded statement that has been given in evidence "fully understood or to explain the same". Therefore, when evidence is admitted under Rule 107, the court is required, upon request, to restrict the evidence to its proper scope and instruct the jury accordingly. Tex. R. Evid. 105(a). The Court of Appeals in *Hoover* reached a different conclusion; however, its opinion in that case has no precedential value. Tex. R. App. Proc. 47.7(a).

### 2. Conclusion

When evidence is admitted under the Rule of Optional Completeness, it is admitted for a limited purpose, namely to make the part of an act, declaration, conversation, writing or recorded statement that has been given in evidence "fully understood or to explain the same". Tex. R. Evid. 107. Therefore, when evidence is admitted under Rule 107, the court is required, upon request, to restrict the evidence to its proper scope and instruct the jury accordingly. Tex. R. Evid. 105(a).

Thus, the trial court in this case erred by admitting State's Exhibit No. 2 in evidence under the Rule of Optional Completeness without a limiting instruction, and the Court of Appeals erred by overruling Appellant's seventh issue on appeal and affirming the judgment of Appellant's conviction and sentence.

Further, the Court of Appeals misconstrued a rule and decided an important question of state and federal law that has not been, but should be, settled by this Court. Tex. Rule App. Proc. 66.3(b), (d).

Therefore, Appellant asks that this Court grant discretionary review, answer the question presented in the affirmative, reverse the opinion and judgment of the Court of Appeals, and remand this case back to the Court of Appeals for a harm analysis.

**Question or Ground for Review: Does a trial court abuse its discretion when it allows an expert witness to testify generally, over objection, about "rolling" disclosures and what happens in other cases without a showing that her testimony is sufficiently tied to the facts of the case to aid the jury in resolving a factual dispute, when the expert witness makes no effort to tie her testimony to pertinent facts of the case?**

## 1. Law and Argument

### Introduction

This question pertains to the admissibility of Carrie Paschall's testimony about "rolling" disclosures and what happens in other cases, which is the fifth issue of Appellant's Brief to the Court of Appeals, and in which Appellant argued that the trial court committed reversible error when it allowed Carrie Paschall to testify about "rolling" disclosures and other cases. (Appellant's Brief, pp. 67-78). Therefore, should this Court grant this petition for discretionary review on this Question or Ground for Review, Appellant asks that this Court also consider Appellant's arguments in Issue Five of his appeal.

### Testimony of Carrie Paschall

At trial, over Appellant's objections, Carrie Paschall was allowed to testify as follows:

> A rolling disclosure is when a child makes the decision to tell about something that has happened to them or has been happening to them. And what we see with a lot of children is . . .
>
> . . . They oftentimes will tell the first person that they tell. They may tell a small portion of what happened to them. And the reason

that they do that is they're gauging reactions, am I being believed, am I being protected, am I being listened to, am I being blamed, all of those things.

As they feel safe and protected, then they may disclose more information the next time that they talk to somebody. And we kind of see that pattern taking place throughout the course of the investigation sometimes and sometimes throughout the course of the lifetime. And we can see that happen in very small amounts of time or very lengthy amounts of time as well.

. . .

What I've seen in my experience is sometimes children will tell about something that happened to them, and as they grow older and gain more sexual knowledge, more self-awareness, sometimes embarrassment, shame, guilt set in, and it's harder to talk about those things that initially when they disclosed them, they didn't understand the full ramifications of what had happened to them.

And so sometimes we can see kids pull back a little bit on what they're saying for those reasons. They start to understand things a little more.

(RR003, 96-98).

## Opinion of the Court of Appeals

In its opinion, the Court of Appeals agreed with the State's argument that Paschall's testimony was properly admitted expert testimony. *Lindberg* at *13. The Court of Appeals said this evidence "was expert testimony regarding behaviors commonly exhibited by children who have suffered sexual abuse," that "it is not objectionable on the grounds that it bolstered the credibility of Girl," and that it "was directly relevant to the fact that Girl, after having told three people that Lindberg had

placed his 'tee-tee' in her 'butt,' later said that Lindberg had not placed his penis anywhere on her person but in her mouth." *Id.* The Court held that the trial court did not abuse its discretion by allowing Paschall to testify regarding rolling disclosures and overruled Appellant's fifth issue. *Id.* at \*13-14 (citations omitted).

## Paschall's testimony was not relevant under Tex. R. Evid. 401.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. When the evidence offered is the opinion testimony of an "expert" witness, the relevance requirement is met if the expert testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002) (internal quotations and citations omitted). Here, the record does not support the Court of Appeals' determination that Paschall's testimony was relevant because neither the State nor Paschall tied her testimony to the facts of this case. For an expert's testimony to be relevant, the *expert* (not the court) must make an effort to tie pertinent facts of the case to the scientific principles that are the subject of her testimony. *Jordan v. State*, 928 S.W.2d 550, 555 (Tex. Crim. App. 1996). Because Paschall did not do that in this case, her testimony about "rolling" disclosures should not have been allowed. *See Williams v. State*, 895 S.W.2d 363, 366 (Tex. Crim. App. 1994) (clinical

psychologist's testimony was not helpful to the jury because he "did not specifically apply his psychological profile testimony to actual characteristics possessed by appellant" and "did not connect his generic testimony . . . to the facts of the case"); *Salazar v. State*, 127 S.W.3d 355, 360 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (Where expert witness's testimony was explicitly offered solely as "educational material" for the jury to use in assessing the complainants' credibility, it was not sufficiently tied to the facts of the case and thus was not relevant.).

### Paschall's testimony was inadmissible under Tex. R. Evid. 403.

By reason of the foregoing, Carrie Paschall's testimony about rolling disclosures should have been excluded from evidence under Tex. R. Evid. 403, which provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Here, the trial court abused its discretion in allowing Carrie Paschall to testify about "rolling" disclosures and what happens in other cases because the testimony posed a substantial risk of unfair prejudice to Appellant and misleading the jury, which substantially outweighed whatever probative value the evidence had.

In reviewing a trial court's decision to admit or exclude evidence under Rule

403 for abuse of discretion, an appellate court must: (1) decide whether the trial judge did in fact conduct the required balancing and "did not simply rule arbitrarily or capriciously," and (2) "measure the trial court's ruling against the relevant criteria by which a Rule 403 decision is to be made." *Montgomery v. State*, 810 S.W.2d 387, 392 (Tex. Crim. App. 1991) (Op. on Reh'g). The Court of Appeals' opinion in this case contains no such analysis, even though Appellant made a timely Rule 403 objection (in addition to his Rule 401 objection) to Carrie Paschall's testimony at trial and based his fifth issue on appeal on both Tex. R. Evid. 401 and 403. (See RR003, 96-97; Appellant's Brief, pp. 73-76). Rather, the Court held that the trial court did not abuse its discretion and overruled Appellant's fifth issue without conducting the requisite analysis prescribed by this Court in *Montgomery. Lindberg* at *13-14.

When undertaking a Rule 403 analysis, a trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

A proper and thorough review of the trial court's ruling would have shown that it was indeed an abuse of discretion. As explained *supra*, Paschall's testimony was not helpful to the jury, and therefore its inherent probative force was weak if not zero. The State did not demonstrate a compelling need for the evidence. Her testimony was unfairly prejudicial because it had "an undue tendency to suggest that a decision be made on an improper basis." *Montgomery*, 810 S.W.2d at 389. It also had a strong tendency to be given undue weight by the jury and thereby mislead the jury. *See Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007). Paschall's testimony was presented as that of an "expert" witness with hundreds of hours of training and experience who had spoken extensively on the subject of forensic interviews and been recognized as an expert in district court in the field of forensic interviews. (RR3, 9, 87-90). Courts, including this Court, have recognized the tendency of this particular kind of evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence. *See, e.g., Gigliobianco*, 210 S.W.3d at 641 ("For example, 'scientific' evidence might mislead a jury that is not properly equipped to judge the probative force of the evidence.") (citation omitted); *Salazar, supra.*

This erroneously admitted evidence did not consume much time, though arguably *any* amount of time spent developing inadmissible evidence is

"inordinate", and the State's use of this testimony to bolster Girl's testimony and the testimony of other witnesses about her out-of-court statements was tantamount to repeating evidence already admitted. Considering all the relevant criteria, the record in this case reveals a risk that the probative value of the evidence is substantially outweighed by unfair prejudice and misleading the jury, mandating the conclusion that the trial court acted irrationally in failing to exclude it and thus abused its discretion. *Montgomery*, 810 S.W.2d at 392–93.

### The Court of Appeals did not conduct a harm analysis.

Because the Court of Appeals rejected Appellant's argument that the trial court erred by allowing Carrie Paschall to testify about rolling disclosures and other cases, it did not conduct a harm analysis. Under Texas Rule of Appellate Procedure 44.2(b), a non-constitutional error of the trial court must be disregarded unless it affected "substantial rights." Because the trial court erred in admitting the testimony of Carrie Paschall, the Court of Appeals should have determined whether this error affected a substantial right of Appellant.

## 2. Conclusion

Carrie Paschall's testimony was not helpful to the jury because it was not sufficiently tied to the facts of this case to aid the jury in resolving any factual dispute. Paschall failed to tie pertinent facts of the case to the scientific principles that were the subject of her testimony, and therefore, her testimony was not

relevant and should have been excluded. In addition, her testimony should have been excluded under Tex. R. Evid. 403 because its probative value (if any) was substantially outweighed by the dangers of unfair prejudice and misleading the jury. The trial court erred in allowing the testimony, and the Court of Appeals erred by overruling Appellant's fifth point of error based on a relevancy determination that was not supported by the record.

Further, the Court of Appeals' decision conflicts with another court of appeals' decision on the same issue, and the Court of Appeals decided an important question of state law in a way that conflicts with the applicable decisions of this Court. *See* Tex. R. App. Proc. 66.3.

Therefore, Appellant asks that this Court grant discretionary review, answer the question presented in the affirmative, reverse the opinion and judgment of the Court of Appeals, and remand this case back to the Court of Appeals for a harm analysis.

**Question or Ground for Review: Are any and all statements made by a patient to a sexual assault nurse examiner (SANE) during the SANE's examination of the patient admissible to prove the truth of the matter(s) asserted under Texas Rule of Evidence 803(4)?**

## 1. Law and Argument

### Introduction

This question pertains to hearsay statements made by the child complainant in this case to Nurse Brenda Crawford, the admissibility of which is addressed in the third issue of Appellant's Brief to the Court of Appeals, and in which Appellant argued that trial court erred reversibly by admitting hearsay in evidence through the testimony of Brenda Crawford. (Appellant's Brief, pp. 52-60). Therefore, should this Court grant this petition for discretionary review on this Question or Ground for Review, Appellant asks that this Court also consider Appellant's arguments in Part C of Issue Three of the direct appeal regarding the hearsay testimony of Nurse Crawford.

### Opinion of the Court of Appeals

After quoting Tex. R. Evid. 803(4)[4] and explaining the basis of this exception to the hearsay rule, the Court of Appeals summarily dealt with Appellant's argument that the child complainant's out-of-court statements to Nurse

---

[4] Tex. R. Evid. 803(4) provides that statements "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are not excluded by the hearsay rule.

Crawford were hearsay not within any exception as follows:

> Here, Crawford specifically testified to what Girl told her during Crawford's sexual assault examination of Girl. Crawford's testimony fell under the well-established exception to the inadmissibility of hearsay found in Rule 803(4). *See Bautista*, 189 S.W.3d at 369 (listing a multitude of Texas appellate decisions upholding this well-established exception to hearsay and the circumstances in which it might apply). We overrule Lindberg's third issue.

*Lindberg* at *12. The Court of Appeals overruled Appellant's third issue on direct appeal without conducting a harm analysis.

**For Girl's statements to Nurse Crawford to be admissible under the "purposes of medical diagnosis or treatment" exception, the State had to show that Girl was aware that the statements were made for that purpose and that proper diagnosis or treatment depends upon the veracity of such statements.**

The Court of Appeals' implicit finding that, just because the statements about which Crawford testified were said to her during her sexual assault examination of the child complainant, this hearsay testimony "fell under the well-established exception to the inadmissibility of hearsay found in Rule 803(4)," flies in the face of this Court's opinion in *Taylor v. State*, in which it said that, for hearsay to be admissible under the "purposes of medical diagnosis or treatment" exception, the proponent of the evidence must show that the out-of-court declarant was aware that the statements were made for that purpose and that proper diagnosis or treatment depends upon the veracity of such statements. 268 S.W.3d 571, 588-89 (Tex. Crim. App. 2008) (footnote omitted). At issue in *Taylor* was the admissibility of a licensed

professional counselor's testimony that relayed what the complaining witness, J.B., had told her in therapy sessions. *Id.* at 574. This Court concluded that the trial court abused its discretion to admit the counselor's testimony of J.B.'s out-of-court declarations, "at least to the extent that they identified the appellant as the perpetrator," reasoning: "It is not readily apparent that knowing the appellant's identity was pertinent to [the counselor]'s treatment of J.B. for the trauma of the sexual assault, and it seems unlikely to have aided [the counselor] in any material way in treating the residual anger issues that J.B. had with her mother." *Id.* at 592. Similarly, in the instant case, knowing the identity of whoever sexually assaulted the child complainant was not in any way pertinent to Nurse Crawford's treatment of her for the trauma of sexual assault, and nothing in the record supports a finding that the child's statements about what Appellant did to her aided Crawford in any material way in her diagnosis or treatment of the child complainant. In fact, since her examination found absolutely no physical injuries or other problems – no injuries to the child's anus or sexual organ, no tears, anal spasm, anal laxity, no lesions, no presence of stool in the rectal ampulla or discharge – and the complainant tested negative for HIV, syphilis, gonorrhea and Chlamydia, the statements were not "reasonably pertinent to diagnosis or treatment" because there was nothing wrong with the child complainant that Nurse Crawford was qualified or equipped to treat. If the complainant was suffering some psychological damage or other mental health

issues as a result of what she said "T.J." did to her, then at least some of her statements to Nurse Crawford would be reasonably pertinent to diagnosis or treatment if made to a therapist, psychiatrist or other mental health professional, but according to Nurse Crawford's own testimony, her "job is to make sure that [the patient's] body is healthy," not to make sure that the patient's *mind* is healthy. The State failed to lay the predicate for the admissibility of this hearsay under Rule 803(4). Per this Court's directive in *Taylor*, an appellate court should not presume the establishment of predicate facts that the State failed to prove up "without effectively relieving the proponent of the hearsay evidence (here, the State) of its burden to establish the existence of a valid exception to the hearsay rule." 268 S.W.3d at 592.

Separate and apart from the reasonable pertinence issue is the question of whether Girl was aware that proper diagnosis or treatment depended upon the veracity of her statements to Nurse Crawford. "Absent such an awareness on the declarant's part," this Court "cannot be sure that the self-interested motive to tell the truth, making such statements sufficiently trustworthy to overcome a hearsay objection, is present." *Taylor* at 589. Although Nurse Crawford testified that she "explain[ed] to the child that the whole purpose for them being there and being honest with me is for the sole purpose of medical treatment and diagnosis," there was no showing that Girl understood or appreciated this. The Second Court of

Appeals has even recognized that, when "very young children are responsible for relating information to their healthcare provider," the presumption of reliability that forms the basis for Rule 803(4) "may break down if they do not understand the importance of being truthful," *Beheler v. State*, 3 S.W.3d 182, 188 (Tex. App.—Fort Worth 1999, pet. ref'd) (citing *Floyd v. State*, 959 S.W.2d 706, 712 (Tex. App.-- Fort Worth 1998, no pet.)), and in *Taylor*, this Court took note of the decisions of other Courts of Appeals that have "held out-of-court statements from child-victims to be inadmissible under Rule 803(4) because there was no reason to believe that the child would (or even could) have appreciated that the purpose of the statement was to facilitate diagnosis or treatment." *See* 268 S.W.3d at 585 n. 70, and cases cited therein.

## The Court of Appeals did not conduct a harm analysis.

The admission of otherwise inadmissible hearsay "is not of constitutional dimension." *Taylor*, 268 S.W.3d at 592. Therefore, the trial court's error in admitting this hearsay in evidence must be disregarded unless it affected Appellant's substantial rights. Tex. Rule App. Proc. 44.2(b). The panel below did not analyze whether the trial court's error in admitting this hearsay testimony affected Appellant's substantial rights. See *Lindberg* at *12.

## 2. Conclusion

The statements Nurse Crawford testified the child complainant made to her

are rank hearsay, and the State failed to show that the statements were admissible under an exception to the hearsay rule. Thus, the trial court abused its discretion when it allowed Nurse Crawford to testify to the statements, and the Court of Appeals erred in ruling that "Crawford's testimony fell under the well-established exception to the inadmissibility of hearsay found in Rule 803(4)" simply because "Crawford specifically testified to what Girl told her during Crawford's sexual assault examination of Girl." As a result, the Court of Appeals erred by overruling Appellant's third issue on appeal and affirming the judgment of the trial court.

Further, the Court of Appeals decided an important question of state law in a way that conflicts with the applicable decisions of this Court and appears to have misconstrued a rule. Tex. Rule App. Proc. 66.3(c), (d). Therefore, Appellant asks that this Court grant discretionary review, answer the question presented in the affirmative, reverse the opinion and judgment of the Court of Appeals, and remand this case back to the Court of Appeals for a harm analysis.

**Question or Ground for Review: Under the *Jackson v. Virginia* standard, are a complainant's uncorroborated, unsworn out-of-court statements legally sufficient evidence of guilt when those statements are contradicted by the complainant's sworn testimony at trial, and the State and defense stipulate that the complainant admitted the *actus reus* of the charged offense never happened?**

## 1. Law and Argument

### Introduction

This question pertains to the sufficiency of the evidence to support Appellant's conviction, which is challenged in the first issue of Appellant's Brief to the Court of Appeals. (Appellant's Brief, pp. 22-32). Therefore, should this Court grant this petition for discretionary review on this Question or Ground for Review, Appellant asks that this Court also consider Appellant's arguments in Issue One of the direct appeal.

### The Evidence

To prove Appellant committed the offense of aggravated sexual assault of a child under 14 years of age as charged in Count Two of the Indictment, the State had to produce enough evidence to convince a rational trier of fact that Appellant intentionally or knowingly caused the anus of the complainant to contact his penis beyond a reasonable doubt. Tex. Penal Code Ann. § 22.021(a)(1)(B) (West Supp. 2015); (CR, 5, 43); *Jackson v. Virginia*, 443 U.S. 307, 313 (1979). The only proof of this allegation at trial was the hearsay of the child complainant, admitted in

evidence through State's Exhibit No. 2 and the testimony of the child's mother and Nurse Crawford. (RR003, 28-29, 71-72; RR006, State's Ex. 2). Girl testified unequivocally at trial that T.J. did not try to touch her with his private part, that he put his private part in her mouth and that he did not put his private part anywhere else on her body. (RR3, 48-50, 53). The State and defense also stipulated that Girl "met with [the prosecutors] on November 23rd, 2013," and that, during this meeting, "she said that the Defendant's penis did not contact her anus." (RR003, 124). No eyewitness testimony, physical evidence or other corroborating evidence that Appellant caused Girl's anus to contact his penis was produced at trial.

## Opinion of the Court of Appeals

In its legal-sufficiency review, the Court of Appeals focused on Girl's out-of-court statements, introduced through the testimony of her Mother and Nurse Crawford and the video of the forensic interview, to the exclusion of the other evidence admitted at trial. *Lindberg* at \*7-8. In so doing, the Court deviated from the standard pronounced by the U.S. Supreme Court in *Jackson v. Virginia*, which requires a reviewing court to consider "*all of the evidence*" when conducting a legal-sufficiency review. 443 U.S. 307, 319 (1979) (footnote omitted) (emphasis in original). The Court of Appeals' analysis of Appellant's first and eighth[5] points of

---

[5] In his eighth point of error on appeal, Appellant argued that the trial court erred by overruling Appellant's objection to the Jury Charge on Count Two of the Indictment and submitting the Charge on both counts to the jury. (Appellant's Brief, pp. 97-98).

error contains no mention of the stipulation or of the child complainant's sworn testimony at trial that Appellant did not try to touch her with his private part and that he did not put his private part anywhere else on her body besides her mouth.

Citing to its own decision in *Kimberlin v. State*, 877 S.W.2d 828, 831–32 (Tex. App.—Fort Worth 1994, writ ref'd), the Court of Appeals said that "a child complainant's outcry statement alone can be sufficient to support a conviction for aggravated sexual assault." *Lindberg* at \*7. The Court found that the State introduced evidence, by way of Girl's mother, Nurse Crawford and a video of Paschall's forensic interview, that Girl had reported that Lindberg put his "tee-tee" in her "butt" after having applied lotion to his penis and that the "evidence from these three sources also demonstrated that Lindberg's actions hurt Girl." *Id.* at \*8. Based on this and *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd), *cert. denied*, 538 U.S. 963 (2003), the Court of Appeals held "that a rational factfinder could have found the essential elements as alleged in count two of the State's indictment." *Id.*

**The evidence in this case was and is legally insufficient under the *Jackson* standard to support Appellant's conviction on Count Two of the Indictment.**

Federal due process requires that the State prove every element of the crime charged beyond a reasonable doubt. *Jackson, supra*. The level of proof sufficient to support a criminal conviction is "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Id.* at

316.

Appellant does not ask this Court to overrule *Kimberlin* or *Tear*, on which the Court of Appeals relied in this case. However, neither *Kimberlin* nor *Tear* involved a situation where part of a child complainant's outcry statements were directly contradicted by the complainant's testimony at trial and the complainant admitted that the *actus reus* of the charged offense never happened. In fact, in ruling that an outcry witness's testimony alone was sufficient evidence to support the defendant's guilt, the *Tear* court noted that "there is no contradictory evidence," *Tear v. State*, 74 S.W.3d at 561 (citing *Kimberlin*, 877 S.W.2d at 828), and *Kimberlin* actually supports Appellant's argument here. In *Kimberlin*, the defendant was convicted by a jury of the offense of aggravated sexual assault of a child based on contact between her mouth and the victim's sexual organ. 877 S.W.2d at 829-31. The victim did not mention any such oral contact in her testimony at trial but did not testify that there was no oral contact either. *Id.* at 830-31. The State relied on the outcry testimony of the victim's mother, who testified that the victim "said that at one time [Kimberlin] went to the frigerator and got sauce and put it on her eyes and her mouth and her toto and that [the defendants] licked the sauce off her eyes and mouth and toto . . . ." *Id.* at 830, 832. This differed from the victim's outcry as transcribed by her mother, which did not allege any oral-genital contact between the victim and Kimberlin. *Id.* at 830. The

Court of Appeals held that the evidence was insufficient to support a conviction on the charged offense and reversed the judgment of the trial court, reasoning:

> By way of analogy, consider a murder trial where the only evidence is the testimony of one witness. That witness testifies both that: (1) the defendant did murder the victim, and (2) the defendant did not murder the victim. No explanation of, or choice between, the inconsistent testimony is made. Are we to confirm the jury's apparent coin-flip decision, when any rational trier of fact could not have believed one version of the story over the other beyond a reasonable doubt? The case here is even stronger for reversal than this hypothetical.

*Id.* at 833. In the instant case, the child complainant did not testify to any anal-penile contact between her and defendant—rather, she explicitly testified that there was no such contact—but the jury heard evidence that she had previously claimed Appellant put his "tee-tee" in her "butt" and also that she expressly denied that his penis contacted her anus. This record compels the same conclusion that the Court of Appeals reached in *Kimberlin*.

In *Fernandez v. State*, the First Court of Appeals reviewed the sufficiency of the evidence in a case where the only evidence implicating the defendant was the hearsay testimony of a police officer and the complainant and concluded: "As a matter of law, unsworn, out-of-court hearsay alone cannot support a finding of guilt beyond a reasonable doubt when unequivocally recanted in court by the declarant." 755 S.W.2d 220, 221-22 (Tex. App.—Houston [1 Dist.] 1988). This Court disagreed with that conclusion and reversed the decision of the Court of Appeals. *Fernandez v. State*, 805 S.W.2d 451, 455-56 (Tex. Crim. App. 1991) (en

banc). That case is not controlling on the issue presented here, however, for a number of reasons. First, the hearsay at issue in *Fernandez* was corroborated by other evidence and was not the only evidence of guilt. *Id.* at 453. Second, there was no stipulation in that case that the declarant admitted that the charged conduct did not occur. Third, this Court did not decide the question or ground for review presented here but focused its opinion on the appellate court's error in excluding the hearsay testimony from its sufficiency review because it believed the probative value of the unobjected-to hearsay was completely undermined by the declarant's in-court testimony. *Id.* at 453-56. By creating this exception to the rule that unobjected-to hearsay has probative value as substantive evidence, the Court of Appeals in *Fernandez* "contravened the policy behind the adoption of Rule 802." *Id.* at 455. This rule is inapplicable here, as all the hearsay inculpating Appellant in this case was objected to at trial. Thus, *Fernandez* is inapposite.

The evidence in this case calls to mind the hypothetical posed by then-Presiding Judge McCormick in his dissenting opinion in *Johnson v. State*, which this Court subsequently used to illustrate "a proper application of the *Jackson v. Virginia* legal-sufficiency standard" in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010):

> [In] a robbery of a convenience store case[, t]he store clerk at trial identifies A as the robber. A properly authenticated surveillance videotape of the event clearly shows that B committed the robbery. But, the jury convicts A. It was within the jury's prerogative to believe

the convenience store clerk and disregard the video. But based on all the evidence the jury's finding of guilt is not a rational finding.

23 S.W.3d 1, 15 (Tex. Crim. App. 2000) (McCormick, P.J., dissenting), *overruled by Brooks*. In the instant case, it was within the jury's prerogative to believe that Girl's out-of-court statements accusing Appellant of putting his "tee-tee" in her "butt" were true and disregard her sworn testimony at trial and the joint stipulation, but based on all the evidence, the jury's finding of guilt on Count Two is not a rational finding.

## 2. Conclusion

Considering all of the evidence in the light most favorable to the prosecution, no rational trier of fact could have found Appellant committed the offense of aggravated sexual assault of a child under 14 years of age as charged in Count Two of the Indictment beyond a reasonable doubt. The only evidence that Appellant caused Girl's anus to contact his penis was unsworn, uncorroborated hearsay that was directly contradicted by the child's unimpeached testimony at trial and an express recantation that was stipulated to by the State and defense. Therefore, the Court of Appeals erred by overruling Appellant's first and eighth issues on appeal and affirming the judgment of the trial court.

Further, the Court of Appeals decided an important question of state and federal law that has not been, but should be, settled by this Court, and the Court of Appeals decided an important question of state and federal law in a way that

conflicts with the applicable decisions of this Court and the Supreme Court of the United States. *See* Tex. R. App. Proc. 66.3(b), (c).

Therefore, Appellant asks that this Court grant discretionary review, answer the question presented in the affirmative, reverse the opinion and judgment of the Court of Appeals, and either enter a judgment of acquittal on Count Two or remand this case back to the Court of Appeals to enter such a judgment. *See* Tex. Rule App. Proc. 43.2(c); *Tibbs v. Florida*, 457 U.S. 31, 41 (1982) (citations omitted).

## IX. Conclusion and Prayer

For the above and forgoing reasons, Appellant respectfully prays that the Court of Criminal Appeals grant discretionary review, find that the Court of Appeals erred, and either remand this case back to the lower court for proceedings consistent with the judgment of this Court or render a decision and judgment as requested in this petition.

Respectfully submitted,

**The Salvant Law Firm, PC**
**610 E. Weatherford**
**Fort Worth, Texas 76102**
**Phone: (817) 334–7997**
**Fax:   (817) 334–7998**
/S/ Brian Salvant

By:_____

Brian Salvant
Texas Bar No. 24008387
E-mail: brian@salvantlawfirm.com
Attorney for Appellant
/S/ Adam L. Arrington

By:_____

Adam L. Arrington
State Bar of Texas No. 24085685
E-mail: Adam@salvantlawfirm.com
Attorney for Appellant

# X. Certificate of Service

This is to certify that on November 20, 2015, in accordance with Texas Rules of Appellate Procedure 9.5 and 68.11, a true and correct copy of the above and foregoing document was served on the District Attorney's Office, Tarrant County, Appellate Division, Debra Ann Windsor, 401 W. Belknap, Fort Worth, Texas 76196, by USPS FIRST CLASS MAIL, and on the State Prosecuting Attorney, P.O. Box 13046, Capitol Station, Austin, Texas 78711-3046, by USPS FIRST CLASS MAIL.

/S/

_____

BRIAN SALVANT

# XI. Certificate of Compliance with Rule 9.4

Using the word-count feature of Microsoft Word, the undersigned certifies that this document contains 9,317 words in the following sections: the Questions or Grounds for Review (VII), Argument (VIII) and Conclusion and Prayer (VI). The word count provided in this Certificate of Compliance excludes the parts of the document exempted by Texas Rule of Appellate Procedure 9.4, which are the caption, identity of parties and counsel, statement regarding oral argument, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix. This document also complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman.

/S/

_____

BRIAN SALVANT

# APPENDIX



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-14-00071-CR

TIMOTHY JAMES LINDBERG                                    APPELLANT

V.

THE STATE OF TEXAS                                           STATE

----------

FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1255906D

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury found Appellant Timothy James Lindberg guilty of two counts of aggravated sexual assault of a child under fourteen and found in a special issue that the child was younger than six years of age. The trial court then assessed punishment at thirty-eight years' imprisonment. In nine issues, Lindberg argues

---

[1]See Tex. R. App. P. 47.4.

that the evidence is insufficient to support his convictions, that the trial court abused its discretion several times through the admission of evidence, and that the trial court erred during voir dire. We will affirm.

## II. BACKGROUND

A few months after Girl[2] was born, her Mother met Stacey through a Craigslist ad. Stacey agreed to babysit Girl, and the two women later became close friends. Stacey lived with Lindberg during the time she babysat Girl. Stacey and Lindberg have three children of their own, one of whom is four months older than Girl. During her first few years, Girl was at Stacey and Lindberg's house frequently. Girl even called Lindberg "T.J." or "Daddy." By the summer of 2011, however, when Girl had reached the age of four, she was going to the couple's house only occasionally.

On June 25, 2011, a Saturday night, Mother and Girl were eating at a restaurant with other family members. According to Mother, Girl announced to everyone present that when she was at Stacey's house the prior week, "T.J. put his tee-tee in [her] mouth." Mother testified that her first reaction was to explain to Girl that it was inappropriate to say such things, to which Girl allegedly replied, "Mommy, he really did for real. He put his tee-tee in my mouth." Mother said that everyone at the table appeared shocked by Girl's statement.

---

[2]We have used a pseudonym for the complainant and other parties where possible in an effort to protect the complainant's privacy.

2

After hearing Girl's statement, Mother said that she immediately went outside, called Stacey, and told her what Girl had said. By Mother's account, Stacey asked Mother to come over to discuss Girl's statement. Mother said that the two got in the car and began to drive to Stacey's house. But as they were driving and as Mother inquired further, Girl told Mother that she and Lindberg had been in the bathroom together, that he had put lotion on his penis, that he had put his penis in her "bottom," and that it had "hurt." Mother said that Girl even drew a penis shape in the air with her finger when asked what Lindberg's penis looked like. Mother decided to head home instead of proceeding to Stacey's home.

Mother said that at that moment she was in shock and did not know what to do. After Mother talked to others, she eventually called the police the following Monday morning, June 27, 2011. After meeting with the police, Mother took Girl to Alliance for Children, where child forensic interviewer Carrie Paschall interviewed Girl. Shortly after, Mother took Girl to Cook Children's Hospital for a physical examination by sexual assault nurse examiner Brenda Crawford.

Paschall testified that she interviewed Girl on June 29, 2011. Paschall said that during her interview with Girl, she conducted "a truth-lie scenario" with Girl in order to determine whether Girl knew "the truth versus a lie, right versus wrong." Paschall averred that she also conducted a "screening phase, which is where [she] used anatomical dolls to assess what [Girl] calls body parts and [to] ask her if she had ever been touched in any way." Paschall testified that after

3

these phases, she conducted a detail-specific interview based on the answers Girl gave her to the previous phases of the interview.

Paschall further answered the prosecutor's questions regarding the concepts of "rolling" and "roll back" disclosures. During this portion of Paschall's testimony, the following exchange occurred:

[Prosecutor]: What's a rolling disclosure?

[Paschall]: A rolling disclosure is when a child makes the decision to tell about something that has happened to them or has been happening to them. And what we see with a lot of children is --

[Defense Counsel]: Objection, Your Honor. It's going into what happens in other cases and such. It's improper. 401, 403 and 404.

THE COURT: That's overruled.

[Prosecutor]: You may continue.

[Paschall]: Okay. They oftentimes will tell the first person that they tell. They may tell a small portion of what happened to them. And the reason that they do that is they're gauging reactions, am I being believed, am I being protected, am I being listened to, am I being blamed, all of those things.

As they feel safe and protected, then they may disclose more information the next time that they talk to somebody. And we kind of see that pattern taking place throughout the course of the investigation sometimes and sometimes throughout the course of the lifetime. And we can see that happen in very small amounts of time or very lengthy amounts of time as well.

[Prosecutor]: Do children sometimes roll back their disclosure?

[Paschall]: Yes.

4

[Prosecutor]: And -- and what ways do you see that?

[Paschall]: I see them --

[Defense Counsel]: Again, Your Honor, this is totally improper as to trying to put in what happens in other cases, trying to suggest that the State's case should be considered when there's no evidence otherwise before the jury. And we object, Your Honor, that it's a -- a backdoor way of trying to say, well, you shouldn't believe the child except when she does something for us, and I object.

THE COURT: That's overruled.

[Prosecutor]: You may continue.

[Paschall]: Could you ask the question again? I'm sorry.

[Prosecutor]: The question was: Why would a child roll back disclosure?

[Defense Counsel]: Same objection.

THE COURT: Overruled.

[Paschall]: What I've seen in my experience is sometimes children will tell about something that happened to them, and as they grow older and gain more sexual knowledge, more self-awareness, sometimes embarrassment, shame, guilt set in, and it's harder to talk about those things that initially when they disclosed them, they didn't understand the full ramifications of what had happened to them.

And so sometimes we can see kids pull back a little bit on what they're saying for those reasons. They start to understand things a little more.

A video recording of Paschall's forensic interview was admitted into evidence at trial and played for the jury. In it, Girl can be heard stating that "T.J."

5

had put his penis in her mouth and that he had also pulled her pants down and had put his penis in her "butt" when she was at Stacey's house. In the video, Girl can be heard saying that when this occurred, Lindberg's penis was "sticking straight." Girl can also be heard saying that Lindberg had put lotion on his penis prior to putting his penis in her "butt." Girl can also be seen drawing a picture of what Lindberg's penis looked like on a drawing board.

Crawford also testified at trial about her medical examination. By Crawford's account, Girl's developmental level was on target for her age at the time she reported the alleged incident. Crawford averred that Girl reported that Lindberg had stuck his penis in her mouth. She also allegedly reported that he had pulled her pants down and put his penis in her "butt" and that this caused Girl pain. Crawford testified that she found no physical evidence regarding Girl's allegations but that in her professional opinion, she would not have expected to find such evidence given the time delay between when the alleged incident occurred and when the examination happened—approximately six days. Crawford testified that her "impression, based on the exam and what [Girl] told [her], was sexual abuse, no anal/genital injuries noted."

Girl was seven years old at the time of trial. She said that when she was four years old, she saw Lindberg's penis while she was in the bathroom with him at Stacey's house. Girl also testified that Lindberg put water on his penis and then put it in her mouth. Girl described Lindberg's penis as "tan" and "soft" and

6

said that nothing came out of it when these alleged events occurred. Girl testified that Lindberg had not touched her anywhere else on her body.

After the State closed, both Lindberg and the State introduced a stipulation to the jury that Girl, on November 23, 2013, had stated to two assistant district attorneys that Lindberg had not caused his penis to contact her anus.

Stacey testified in Lindberg's defense. Stacey stated that Lindberg had been home alone with some of their children and Girl when the alleged assaults were reported to have happened. She stated, however, that she did not believe Girl's outcries.

Lindberg testified at trial. He denied committing the offense but agreed that he had the opportunity to be alone with Girl for multiple hours at the time the alleged events occurred. Lindberg also said that he thought of Girl like his own daughter and that he did not know why she had made these accusations about him.

A jury found Lindberg guilty of two counts of aggravated sexual assault of a child—count one alleging that Lindberg caused Girl's mouth to contact his penis and count two alleging he caused Girl's anus to contact his penis. The jury also found "true" the special issue that Girl was under six years of age at the time of the offenses. The trial court assessed punishment at thirty-eight years' confinement for each count, with the sentences to be served concurrently. This appeal followed.

7

## III. Discussion

### A. Sufficiency of the Evidence

In his first and eighth issues, Lindberg argues that the evidence is insufficient to support both counts of aggravated sexual assault. Specifically, in his first and eighth issues, Lindberg argues that the State failed to present evidence that he "intentionally or knowingly" committed aggravated sexual assault. In his eighth issue, Lindberg argues that the trial court erred by denying his motion for directed verdict on count two, which alleged that he caused Girl's anus to contact his penis. We disagree.

### 1. Standard of Review and Aggravated Sexual Assault

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we

8

may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *see Crabtree v. State*, 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Byrd*, 336 S.W.3d at 246. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013); *see also Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014)

9

("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

The testimony of a child victim alone may be sufficient to support a conviction for aggravated sexual assault. Tex. Code Crim. Proc. Ann. art. 38.07 (West Supp. 2014); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd), *cert. denied*, 538 U.S. 963 (2003). Furthermore, a child complainant's outcry statement alone can be sufficient to support a conviction for aggravated sexual assault. *Kimberlin v. State*, 877 S.W.2d 828, 831–32 (Tex. App.—Fort Worth 1994, pet. ref'd) (*citing Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991)).

A person commits the offense of aggravated sexual assault of a child when, as it applies to count one of the State's indictment in this case, he intentionally or knowingly causes the penetration of the mouth of a child by the sexual organ of the actor. Tex. Penal Code Ann. § 22.021(a)(1)(B)(ii) (West 2011). As to count two of the State's indictment, a person commits aggravated sexual assault of a child if the person intentionally or knowingly causes his sexual organ to contact the anus of a child younger than fourteen years of age. *Id.* § 22.021(a)(1)(B)(i), (a)(1)(B)(iv), (a)(2)(B).

10

## 2. Intent as to Counts One and Two

In determining the sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). Further, a culpable mental state can be inferred from the acts, words, and conduct of the accused. *Martin v. State*, 246 S.W.3d 246, 263 (Tex. App.—Houston [14th Dist.] 2007, no pet.). And there is no requirement for an oral expression of intent—the conduct itself is sufficient to infer intent. *Connell v. State*, 233 S.W.3d 460, 467 (Tex. App.—Fort Worth 2007, no pet.).

Here, viewing the evidence in a light most favorable to the jury's verdict, a rational jury could have found that Lindberg intended to cause Girl's mouth to contact his penis when, by her statements, he placed water on his penis and then placed it in her mouth. Further circumstances supporting Lindberg's intent include that no other adults were around when these events occurred and that Girl reported that Lindberg's penis was "sticking straight" when he placed it in her mouth. *See Tear*, 74 S.W.3d at 560 ("The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault."). Likewise, a rational jury could have found the requisite intent regarding count two, that he caused his sexual organ to contact Girl's anus, when, by her statements, he placed lotion on his penis and put his penis in her "butt." Further circumstances

11

supporting Lindberg's intent are the child's report to Mother, Paschall, and Crawford that it hurt when Lindberg had done this.

Moreover, regarding both counts, the State introduced evidence that Girl said that "T.J" had done these things, that it was known that she referred to Lindberg as "T.J.," and that Girl demonstrated the ability to twice draw Lindberg's penis as well as describing its color.

Viewing all of the evidence in the light most favorable to the prosecution, we hold that the evidence is sufficient to support the jury's determination that Lindberg intended to commit both of the State's counts of aggravated sexual assault. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

### 3. Count Two

As to count two, Lindberg argues that the trial court erred by denying his motion for directed verdict. Specifically, Lindberg argues that the "State offered no real evidence" that he had caused Girl's anus to contact his penis. We disagree.

The State introduced evidence, by way of Mother, Crawford, and a video of Paschall's forensic interview, that Girl had reported that Lindberg put his "tee-tee" in her "butt" after having applied lotion to his penis. *See Tear*, 74 S.W.3d at 560 ("[A] child victim's outcry statement alone can be sufficient to support a conviction for aggravated sexual assault."). The evidence from these three sources also demonstrated that Lindberg's actions hurt Girl.

12

We are mindful that Lindberg objects in later issues that these three sources of evidence should not have been admitted; however, when conducting a sufficiency of the evidence review, we must consider all the evidence admitted at trial, even improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004).

Viewing the evidence in light most favorable to the jury's verdict, we hold that a rational factfinder could have found the essential elements as alleged in count two of the State's indictment. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170. We overrule Lindberg's first and eighth issues.

## B.    Challenges for Cause

In his second issue, Lindberg argues that the trial court erred by granting the State's challenge for cause to Veniremember Number Fifty and by also denying his challenge for cause to Veniremember Number Twenty-Five. The State counters that the trial court did not err by granting its challenge for cause to Veniremember Number Fifty because the juror had shown bias or prejudice and that the trial court did not err by denying Lindberg's challenge for cause to Veniremember Number Twenty-Five because the juror had not demonstrated that he would not follow the law. We agree with the State.

### 1.    Voir Dire

During voir dire, the State discussed the "one-witness rule." *Lee v. State*, 206 S.W.3d 620, 621 (Tex. Crim. App. 2006). At the beginning of the discussion,

13

the State gave an example of a robbery in a deserted parking lot and then explained,

> It's called the one -- one-witness rule, that if one witness comes in and testifies and test -- remember all those things -- we call them elements, the on or about, reasonable, all that stuff, intentionally or knowingly. If that one witness comes in and testifies to all those elements and you believe that witness beyond a reasonable doubt, what's your verdict?

After the State discussed this with the panel, Veniremember Number Fifty asked, "What's to prevent me from saying that you were the person that assaulted me in the parking lot just -- you know, you may have looked at me wrong, you know, in the courtroom?" The State responded, "Well, I guess there's nothing saying that -- stopping you from saying it." Then the following exchange occurred:

[Veniremember Number Fifty]:   Right.

[STATE]:   In a jury trial, I'm hoping that through cross-examination, direct testimony, the jury -- I'd be hoping the jury would see that it's not proven beyond a reasonable doubt. You see what I'm saying?

[Veniremember Number Fifty]:   If I meet all the -- the qualifications beyond a reasonable doubt, it could still be not telling the truth.

[STATE]:   Could be. But here's the question: If you believe a witness beyond a reasonable doubt and it's only one witness and it's proven it's -- the State's proven its case beyond a reasonable doubt regarding each of the elements of the offense through one witness, how would you find the Defendant?

[Veniremember Number Fifty]:   You still got human nature to take --

14

[STATE]: Yes.

[Veniremember Number Fifty]: -- into consideration, and it would be hard to find a guilty verdict.

[STATE]: Right. I'd be hard, but would you do it? If you can't do it, it's okay.

[Veniremember Number Fifty]: No.

[STATE]: Couldn't do it?

[Veniremember Number Fifty]: No, sir.

[STATE]: And I'm going to have to kind of backtrack a little bit. So the State calls one witness, and through that one witness, we've got testimony and you believe beyond a reasonable doubt each element of the offense based on that one witness' testimony, would you still find the Defendant not guilty?

[Veniremember Number Fifty]: Yes.

[STATE]: Okay. Even though the Judge has instructed you that if you believe beyond a reasonable doubt that the Defendant's guilty --

[Veniremember Number Fifty]: Again, I pose my question, What's to prevent someone from lying?

[STATE]: And so no matter -- you believe beyond a reasonable doubt, but because only one witness testified, you'd still find the Defendant not guilty?

[Veniremember Number Fifty]: Yes.

[STATE]: And so you're holding the State to a higher burden?

[Veniremember Number Fifty]: Yes.

[STATE]: Thank you, sir. I appreciate it.

15

At another moment during the State's voir dire, Veniremember Number Twenty-Five stated that he could not "leave [his] intuition at the door." The following colloquy occurred:

[STATE]: Well, intuition may be a part here, because as a juror, you may not feel -- you may have a feeling that this person's lying. And if you think that, you can certainly use that as part of your decision making as to whether or not you believe everything they say, none of what they say or part of what they say. Okay?

Because you're the judges of the facts. He's wearing the robe; he's the judge of the law. When you're sitting over here, you'll be the judge of the facts. Does that make sense?

[Veniremember Number Twenty-Five]: Yes.

[STATE]: Am I doing an okay job here?

[Veniremember Number Twenty-Five]: Reasonable.

[STATE]: Reasonable. Don't pat me on the back too much.

So what's your question, sir?

[Veniremember Number Twenty-Five]: Well, I'm back to intuition again, is when -- are jurors allowed to use their intuition? If so, when during the process?

[STATE]: I would say this is the part right here. When that person comes up here and takes the oath and starts giving you answers, there could be a way in which they're talking that you don't like and that you -- you think is lending themselves to be untruthful; or you may see a way that they're talking like this person's telling the truth. I mean, we do that in interact -- social interactions every day, don't we?

16

Is that a yes or no?

[Veniremember Number Twenty-Five]: Well, I -- both visible and sensed.

[STATE]: And I most certainly think you can do that whenever you're listening to someone's testimony. Okay?

[Veniremember Number Twenty-Five]: I'm uneasy about it.

[STATE]: Well, I understand -- I can understand being uneasy about it, but it will be your job. You'll be instructed that you can believe everything somebody says, some of what they say, none of what they -- or none of what they say. That's going to be your job as a jury.

And because, you know, there may -- because the child waited a long time, there may not be any physical evidence. There may not -- there may not be DNA. There may not be findings. It may just be testimony. You see what I mean?

[Veniremember Number Twenty-Five]: Yes.

[STATE]: So do you have any issues now?

[Veniremember Number Twenty-Five]: No.

[STATE]: Okay. Thank you, sir.

Later, Lindberg questioned Veniremember Number Twenty-Five through the following exchange:

[Defense Counsel]: And, [Veniremember Number Twenty-Five], you had mentioned, you know, because you were a father of -- of small children, that you would have a problem sitting as a juror in this kind of a case; is that correct?

[Veniremember Number Twenty-Five]: I think that after discussing it with the State, what -- what really, I think, was come to

17

(sic) was if there are moments we're supposed to use intuition and balancing the facts, that comes into play, of course. If I feel like a child's -- a kid -- if they're not telling the truth, that might -- that might change the way I -- I view it. But I don't feel, in general, that children lie any more than human -- adults.

[Defense Counsel]: Let me ask you about using intuition. What do you mean by intuition? You just kind of say, Well, yeah, I look at that person and they're a truth-teller or, you know, just before they say a word, or they're a liar, or what is intuition? I'm not sure.

[Veniremember Number Twenty-Five]: Well, what is intuition or how is that --

[Defense Counsel]: What is it?

[Veniremember Number Twenty-Five]: Well, I mean, it's a -- an understanding of a situation based on things that aren't as tangible as pure facts.

[Defense Counsel]: So you would sort of resolve questions based upon your emotions or your feelings about it?

[Veniremember Number Twenty-Five]: I believe that's what we're being asked to do, yeah.

[Defense Counsel]: Okay. I appreciate it. Thank you, sir.

At the conclusion of voir dire, the State challenged Veniremember Number Fifty for cause, arguing that he would hold the State to a higher burden than required. The court granted the challenge for cause. Lindberg then asked for an

18

additional peremptory challenge "because the State has 11 strikes, and -- and we only got 10." The court deferred ruling on the request, stating that it would evaluate it at the "conclusion of the strikes."

Later, Lindberg challenged Veniremember Number Twenty-Five for cause, arguing that the veniremember had "said that he had small children and it would affect him in how he decides the cases and, in fact, he would use intuition to fill in the gaps for evidence." The court denied the challenge.

## 2. Standard of Review

We review a trial court's ruling on a challenge for cause with considerable deference because the trial court is in the best position to evaluate the veniremember's demeanor and responses. *Newbury v. State*, 135 S.W.3d 22, 32 (Tex. Crim. App.), *cert. denied*, 543 U.S. 990 (2004); *Tucker v. State*, 183 S.W.3d 501, 511 (Tex. App.—Fort Worth 2005, no pet.). We reverse a trial court's ruling on a challenge for cause only upon a clear abuse of discretion. *Newbury*, 135 S.W.3d at 32; *Curry v. State*, 910 S.W.2d 490, 493 (Tex. Crim. App. 1995); *Tucker*, 183 S.W.3d at 511. In determining whether the trial court abused its discretion, we review the total voir dire record in context. *See Mathis v. State*, 67 S.W.3d 918, 924 (Tex. Crim. App. 2002); *King v. State*, 29 S.W.3d 556, 568 (Tex. Crim. App. 2000); *Emenhiser v. State*, 196 S.W.3d 915, 927 (Tex. App.—Fort Worth 2006, pet. ref'd).

"A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury." Tex.

19

Code Crim. Proc. Ann. art. 35.16(a) (West 2001). When a veniremember is challenged for cause because he could not convict based upon one witness whom he believed beyond a reasonable doubt and whose testimony proved every element of the indictment beyond a reasonable doubt, then the veniremember is validly challenged for cause. *Lee*, 206 S.W.3d at 623.

### 3. Veniremember Number Fifty

Here, Veniremember Number Fifty specifically stated that he would not be able to convict a defendant based on the testimony of one witness regardless of whether he believed that witness and regardless of whether the witness's testimony established the elements of the crime. We hold that the trial court did not clearly abuse its discretion by granting the State's challenge for cause as to Veniremember Number Fifty. *See id.*

### 4. Veniremember Number Twenty-Five

Lindberg also argues that the trial court erred by not granting his challenge for cause as to Veniremember Number Twenty-Five. Specifically, Lindberg argues that Veniremember Number Twenty-Five effectively said that he would base his conclusions on mere speculation or factually unsupported inferences or presumptions. We see nothing in the record to support that Veniremember Number Twenty-Five made any such statement. It is evident, when looking at the voir dire as a whole, that Veniremember Number Twenty-Five effectively said that he would use his own experiences to determine whether a child was telling the truth. Determining the credibility of a witness's testimony is the province of

20

the jury. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony."), *cert. denied*, 532 U.S. 944 (2001); *see also Gonzales v. State*, 353 S.W.3d 826, 831 (Tex. Crim. App. 2011) ("We look at the entire record of voir dire to determine if the evidence is sufficient to support the court's ruling on a challenge for cause."). Therefore, we cannot conclude that the trial court clearly abused its discretion by denying Lindberg's challenge to Veniremember Number Twenty-Five. We overrule Lindberg's second issue.

## C. Mother's and Crawford's Testimony

In his third issue, Lindberg alleges that the trial court "erred, abused its discretion and violated a substantial right of" his by allowing Mother and Crawford to testify regarding out-of-court statements made by Girl. Lindberg essentially argues that the two witnesses' testimony was inadmissible hearsay. The State argues, among several retorts, that Mother's testimony fell under the "outcry" exception to hearsay and that Crawford's testimony pertained to medical diagnosis and treatment, and therefore both witnesses' testimony was admissible. We agree with the State.

### 1. Mother's Testimony

Hearsay is generally inadmissible. Tex. R. Evid. 802. But article 38.072 of the Texas Code of Criminal Procedure provides that an outcry statement is not inadmissible on the basis that it is hearsay if, in relevant part, (1) the statement describes a sexual assault offense that a defendant committed against a child

21

younger than fourteen years of age; (2) the statement was made by the child to the first person who was eighteen years old or older, other than the defendant, that the child spoke to about the offense; and (3) the "trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement." Tex. Code Crim. Proc. Ann. art. 38.072, §§ 1(1), 2 (West Supp. 2014); *see Sanchez v. State*, 354 S.W.3d 476, 487–88 (Tex. Crim. App. 2011); *West v. State*, 121 S.W.3d 95, 104 (Tex. App.—Fort Worth 2003, pet. ref'd). Outcry testimony admitted in compliance with article 38.072 is considered substantive evidence, admissible for the truth of the matter asserted in the testimony. *Duran v. State*, 163 S.W.3d 253, 257 (Tex. App.—Fort Worth 2005, no pet.).

A trial court's decision that an outcry statement is reliable and admissible under article 38.072 will not be disturbed absent a clear abuse of discretion. *Id.*; *see Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). A trial court abuses its discretion by admitting a statement under article 38.072 only when the court's decision falls outside of the zone of reasonable disagreement. *Bautista v. State*, 189 S.W.3d 365, 367 (Tex. App.—Fort Worth 2006, pet. ref'd).

In this case, the trial court conducted a hearing outside the jury's presence to determine when and how Girl had revealed to Mother what Lindberg had allegedly done to her. Mother testified that Girl told her that "T.J. put his tee-tee" in Girl's mouth and that Girl told Mother when this happened. At the hearing, Mother also averred that as the two drove toward Stacey's house, Girl further

22

explained that Lindberg had put his penis in her "butt" and that it hurt. Mother further testified that Girl was able to draw in the air with her finger what Lindberg's penis looked like.

Relying on this court's decisions in *In re M.R.* and *Moon v. State*, Lindberg argues that Mother's questions to Girl during their car ride somehow made Girl's out-of-court statements unreliable. *In re M.R.*, 243 S.W.3d 807, 813–15, 819 (Tex. App.—Fort Worth 2007, no pet.); *Moon v. State*, 856 S.W.2d 276, 279–81 (Tex. App.—Fort Worth 1993, pet. ref'd). We find nothing in either of these cases to support Lindberg's reliance on them. Contrary to Lindberg's assertions, *In re M.R.* does not stand for the proposition that follow-up questions make a child's outcry statement unreliable per se. 243 S.W.3d at 819. Indeed, this court concluded in *Moon* that the forensic interviewer's questioning of the children complainants did not undermine the reliability of the children's admissible outcry statements. 856 S.W.2d at 279.

In short, the trial court had testimony before it regarding the time, content, and circumstances of Girl's outcry. We conclude that the trial court did not abuse its discretion by determining that Mother was the outcry witness in accordance with article 38.072 and that her testimony was reliable. *See Josey v. State*, 97 S.W.3d 687, 692 (Tex. App.—Texarkana 2003, no pet.) (holding trial court did not abuse discretion by finding mother proper outcry witness where child-complainant told mother that defendant put his penis in child's mouth).

23

### 2. Crawford's Testimony About What Girl Said

Rule 803(4) provides an exception to the hearsay rule for "A statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; or their inception; or their general cause." Tex. R. Evid. 803(4). This exception is based on the assumption that the patient understands the importance of being truthful with the medical personnel involved to receive an accurate diagnosis and treatment. *Beheler v. State*, 3 S.W.3d 182, 188 (Tex. App.—Fort Worth 1999, pet. ref'd).

Here, Crawford specifically testified to what Girl told her during Crawford's sexual assault examination of Girl. Crawford's testimony fell under the well-established exception to the inadmissibility of hearsay found in Rule 803(4). *See Bautista*, 189 S.W.3d at 369 (listing a multitude of Texas appellate decisions upholding this well-established exception to hearsay and the circumstances in which it might apply). We overrule Lindberg's third issue.

### D. Crawford's Diagnosis

In his fourth issue, Lindberg argues that the trial court erred by allowing Crawford to testify that "she had diagnosed sexual abuse based on what [Girl] told her." The State counters that Crawford's testimony was both reliable as expert testimony and was necessary to rebut Lindberg's opening argument that if he had committed aggravated sexual assault by inserting his penis into Girl's anus, "surely there'd be some sort of tear, bruising or something."

24

We agree with Lindberg that Crawford's testimony that she had diagnosed sexual abuse solely on what Girl told her and her lack of finding any physical indications of assault was impermissible. *See Salinas v. State*, 166 S.W.3d 368, 371 (Tex. App.—Fort Worth 2005, pet. ref'd) (holding impermissible expert testimony diagnosing sexual abuse based on a child's medical history alone). We are also not swayed by the State's argument that Crawford's testimony of her diagnosis based solely on what Girl had told her was necessary to rebut his opening statement. Indeed, Crawford's testimony that no physical indications of sexual assault were present and that this was typical was sufficient to rebut the "[opened] door" regarding Lindberg's claim that "surely there'd be some" physical injury.

Much like in *Salinas*, we conclude that Crawford's testimony that she diagnosed sexual abuse based solely on Girl's statements and no findings of physical injury was non-constitutional error. *Id.* Because we determine that the error is not constitutional, rule 44.2(b) is applicable. Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (*citing Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

25

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

Here, the record includes testimony from Mother that Girl told her that "T.J. put his tee-tee" in her mouth and her "bottom." Mother also testified that Girl told her that Lindberg had put lotion on his penis before "put[ting]" it in her bottom. Furthermore, and as we will address the admissibility of below, the jury was provided with a video of Paschall's forensic interview of Girl, in which Girl can be heard stating again that "T.J." had inserted his penis into both her "mouth" and "butt." The video also included visual demonstrations of Girl expressing these things while using anatomically correct dolls, and Girl drew what she purported to be Lindberg's penis in the video. And even though Crawford should not have been allowed to comment on the credibility of Girl by testifying to her diagnosis based solely on Girl's statements, the trial court properly allowed Crawford to testify to what Girl reported to her as part of the medical exam. Furthermore, and even though Lindberg argues that Crawford's testimony was emphasized, we conclude that the State did not emphasize Crawford's testimony regarding her

26

diagnosis; rather, the State emphasized that Girl's statements to Mother, Paschall, and Crawford were consistent. *See Salinas*, 166 S.W.3d at 371 (holding impermissible testimony from medical examiner harmless). We overrule Lindberg's fourth issue.

### E.    Rolling Disclosures

In his fifth issue, Lindberg argues that the trial court erred by allowing Paschall to testify about "rolling" disclosures and "what happens in other cases." Specifically, Lindberg argues that Paschall's testimony about rolling disclosures was irrelevant in that it "improperly bolster[ed] the State's other evidence" and "it was not sufficiently tied to the facts of the case to aid the jury in resolving a factual dispute." The State argues that Paschall's testimony was properly admitted expert testimony. We agree with the State.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009). Expert testimony that a particular witness is truthful is inadmissible under Tex. R. Evid. 702. *See* Tex. R. Evid. 702; *Pavlacka v. State*, 892 S.W.2d 897, 902 n.6 (Tex. Crim. App. 1994); *Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993); *Chavez v. State*, 324 S.W.3d 785, 788 (Tex. App.—Eastland 2010, no pet.). Therefore, an expert witness may not offer a direct opinion on the truthfulness of a child complainant's allegations. *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997); *Yount*, 872 S.W.2d at 708; *Chavez*, 324 S.W.3d at 788. Nor may an expert offer an opinion that the class of persons to which the

27

complainant belongs, such as child sexual abuse victims, is truthful or worthy of belief. *Pavlacka*, 892 S.W.2d at 902 n.6; *Yount*, 872 S.W.2d at 712; *Chavez*, 324 S.W.3d at 788–89. But testimony from an expert witness about behaviors commonly exhibited by children suffering sexual abuse can be relevant and admissible under Rule 702. *Yount*, 872 S.W.2d at 708–09; *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993); *Chavez*, 324 S.W.3d at 789. Such testimony is not objectionable on the ground that it bolsters the credibility of the child complainant. *Cohn*, 849 S.W.2d at 820–21; *Chavez*, 324 S.W.3d at 789.

In this case, Paschall did not offer a direct opinion that Girl was truthful or that she belonged to a class of persons that was truthful or worthy of belief. Instead, Paschall offered testimony that it is a common behavior exhibited by children who have suffered sexual abuse to tell small portions of what had happened to them in order to gauge the reaction of the adults that they are disclosing the abuse to. Paschall also testified that this same class of children will sometimes "roll back" their disclosures as they mature and "gain more sexual knowledge" and "self-awareness." Specifically, Paschall said that sometimes the "guilt" or "shame" associated with sexual abuse can cause some children to "pull back a little bit on what they're saying." This evidence was expert testimony regarding behaviors commonly exhibited by children who have suffered sexual abuse, and it is not objectionable on the grounds that it bolstered the credibility of Girl. *Cohn*, 849 S.W.2d at 820–21; *Chavez*, 324 S.W.3d at 789.

Further, Paschall's testimony was directly relevant to the fact that Girl, after having told three people that Lindberg had placed his "tee-tee" in her "butt," later said that Lindberg had not placed his penis anywhere on her person but in her mouth. We hold that the trial court did not abuse its discretion by allowing Paschall to testify regarding rolling disclosures. *See Lair v. State*, No. 02-12-00068-CR, 2013 WL 4033618, at *3 (Tex. App.—Fort Worth Aug. 8, 2013, pet. ref'd) (mem. op., not designated for publication) (holding that trial court did not abuse discretion by allowing expert to testify regarding "rolling disclosures"); *Dison v. State*, No. 11-09-00094-CR, 2011 WL 1435201, at *6 (Tex. App.—Eastland Apr. 14, 2011, pet. ref'd) (mem. op., not designated for publication) (same). We overrule Lindberg's fifth issue.

## F.    Videotaped Forensic Interview

In his sixth and seventh issues, Lindberg argues that the trial court abused its discretion by allowing the State to play for the jury the entire videotaped recording of Paschall's forensic interview with Girl. Lindberg also argues that he was entitled to a limiting instruction regarding the videotaped interview. The State argues that the videotaped recording was necessarily admitted by the trial court in order to rebut Lindberg's defensive theories that Girl had been coached to say that "T.J. put his tee-tee in my mouth" and that Girl had actually described a different person, Mother's boyfriend, as the alleged assailant in her forensic interview.

29

Rule 107, the rule of optional completeness, is a recognized exception to the general rule prohibiting admission of hearsay. Tex. R. Evid. 107; *Mick v. State*, 256 S.W.3d 828, 831 (Tex. App.—Texarkana 2008, no pet.). This rule is one of admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter "opened up" by the adverse party. *Walters v. State*, 247 S.W.3d 204, 217–18 (Tex. Crim. App. 2007). It is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing. *Id.* Rule 107 does not permit the introduction of other similar, but inadmissible, evidence unless it is necessary to explain properly admitted evidence. *Id.* Further, the rule is not invoked by the mere reference to a document, statement, or act. *Id.*

Generally, when a portion of a videotaped conversation is inquired into by the defense, the State is entitled to offer any other evidence that is necessary to make the conversation fully understood. *Credille v. State*, 925 S.W.2d 112, 117 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). More precisely, under Rule 107, the State is entitled to admission of a complainant's videotaped statement when (1) the defense attorney asks questions concerning some of the complainant's statements on the videotape, (2) the defense attorney's questions leave the possibility of the jury's receiving a false impression from hearing only a part of the conversation, with statements taken out of context, and (3) the

videotape is necessary for the conversation to be fully understood. *Id.* at 116–17.

Here, during opening arguments, Lindberg stated that during Girl's forensic interview, Girl "was walking around and just kept repeating, T.J. put his tee-tee in me, and it hurt, and kept repeating it like somebody had told her." Later in opening argument, Lindberg argued that during the interview, Girl described "a person with no hair. . . . As you can see, [Lindberg's] . . . got hair." Lindberg even argued in opening argument that the "person living with [Girl's] mother doesn't have hair and fits the exact description" of the person Girl described in the forensic interview. Later, when questioning Mother, Lindberg repeatedly asked Mother questions regarding statements Girl made in the interview. And again, during cross-examination of Girl, Lindberg asked Girl about statements she had made during the interview.

These opening statements and repeated questions left open the possibility that the jury would receive a false impression—that Girl had denied that Lindberg touched her "butt" with his penis, that Girl had described a person other than Lindberg as the assailant, or that Girl appeared to have been coached to make the statements that she made during the interview. Therefore, for the jury to fully understand the context of the conversations and determine which interpretation was correct, the trial court determined it was necessary to review the videotape.

Our standard of review is abuse of discretion. Thus, the question before this Court is whether the trial court's decision was "outside the zone of

31

reasonable disagreement." *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). We conclude that the court's decision was within the bounds of its discretion and overrule Lindberg's sixth and seventh issues. *See Mick*, 256 S.W.3d at 831–32 (holding videotaped forensic interview admissible in prosecution for aggravated sexual assault of a child under rule of optional completeness where defense attorney's questions to detective about child's statements on recording left open possibility that jury would receive false impression); *see also Hoover v. State*, No. 03-05-00641-CR, 2007 WL 619500, at *7 (Tex. App.—Austin Feb. 27, 2007, no pet.) (not designated for publication) ("Moreover, because the evidence was admissible under rule 107 for all purposes, no limiting instruction was necessary at the time the evidence was introduced or in the charge.").

## G. Prosecutor's Closing Argument

In his ninth issue, Lindberg argues that the trial court erred by overruling his objection to the State's referral to statements made by Girl in the videotaped interview as "testimony" during closing arguments. We disagree.

Proper jury argument generally encompasses one of the following: (1) an answer to the opposing counsel's argument; (2) a summation of the evidence presented at trial; (3) a reasonable deduction drawn from that evidence; or (4) a plea for law enforcement. *Wesbrook*, 29 S.W.3d 103 at 115. To determine whether a party's argument falls within one of these categories, the court considers the argument in light of the entire record and within the context in

which it appears. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). A trial court's ruling on an objection that jury argument is improper is reviewed for abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004).

Here, the trial court did not abuse its discretion by determining that the State's argument was a proper summation of the evidence. *See Wesbrook*, 29 S.W.3d at 115. The prosecutor simply referred to Girl's statements on the forensic interview video as "testimony" rather than "evidence." Lindberg does not explain why, according to his briefing, this description was "extreme and manifestly improper." As the State points out, it seems likely that the video was referred to as "testimony" because that was what it was most like, and it would have been easy for jurors to understand the prosecutor's argument. We overrule Lindberg's ninth issue.

## IV. Conclusion

Having overruled all nine of Lindberg's issues, we affirm the trial court's judgments.

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: September 24, 2015

33